UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **D-4, JAMES MCGLORY**, <br><br> Defendant. | 2:17-cr-20489 <br><br> HON. TERRENCE G. BERG <br><br> **ORDER DENYING MOTION FOR RELEASE FROM DETENTION** |

James McGlory requests that the Court revoke the Magistrate Judge's order of detention and release him on bond pending trial because of the ongoing COVID-19 pandemic. McGlory, who is 34 years old, urges that he is particularly vulnerable to the SARS-CoV-2 virus because he suffers from hypertension. He is being held at the Federal Detention Center in Milan, Michigan ("Milan FDC") pending trial. Although McGlory's hypertension may place him in a higher-risk category for COVID-19, staff at Milan FDC and the related Federal Correctional Institution ("Milan FCI")[1] are taking reasonable precautions to prevent or limit the spread of the virus. As of April 14, the date of the government's response, only two Milan FDC detainees had been diagnosed with COVID-19. ECF No. 361, PageID.2468. As of the date of

---

[1] The Bureau of Prisons website states that McGlory is being held at Milan FCI, but the government asserts he is at Milan FDC because he is a pre-sentencing detainee. ECF No. 361, PageID.2467 (Gov't Response).

1

this Order, 35 Milan FCI prisoners and 25 Milan employees (some of whom work at both the FDC and FCI) have tested positive. Although the Court is concerned about the spread of COVID-19 in FDC and FCI Milan, McGlory has not demonstrated that his release would mitigate, rather than exacerbate, the risk of contracting COVID-19 for him and the public. Further, he has not presented any new information that compels the Court to alter the Magistrate Judge's finding that he is a flight risk, and a potential danger to the community. The motion to revoke pretrial detention order (ECF No. 356) will accordingly be denied.

## BACKGROUND

According to the criminal complaint in this case, McGlory committed the offense of conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846, 841(a). ECF No. 1, PageID.1010 (Apr. 16, 2018 Crim. Compl.). The supporting affidavit sworn by a Special Agent of the Drug Enforcement Administration ("DEA") alleges that McGlory was involved in a narcotics distribution conspiracy in the Eastern District of Michigan from at least January 2017 through April 2018. ECF No. 1, PageID.1011–12. The Seventh Superseding Indictment accordingly charges McGlory with conspiracy to distribute controlled substances. 21 U.S.C. §§ 846, 841(a). Of the drugs seized in the course of investigating this case, the indictment attributes several kilograms of mixtures or substances containing heroin, cocaine, fentanyl, and tramadol to McGlory. ECF No. 236, PageID.1724–25.

Magistrate Judge Elizabeth A. Stafford ordered McGlory detained pending trial. Finding probable cause that he committed an offense punishable by a maximum prison term of 10 years or more, the Magistrate Judge applied a rebuttable presumption in favor of detention. ECF No. 11, PageID.1032 (Apr. 30, 2018 Detention Order). McGlory was unable to present evidence sufficient to overcome this presumption in favor of detention. *Id.* Magistrate Judge Stafford further found, by clear and convincing evidence, that no conditions of release could be fashioned for McGlory that would reasonable assure the safety of the community. *Id.* She also determined by a preponderance of the evidence that no condition of release could ensure Defendant's appearance at subsequent legal proceedings. *Id.* In further support of her decision to detain McGlory pending trial, Magistrate Judge Stafford referred to the "strong" evidence against him, his prior criminal history, lack of family or community ties in this district, and previous participation in criminal activity while on probation, parole, or supervision. ECF No. 11 at PageID.1032–33. Trial on McGlory's conspiracy to distribute controlled substances charges is currently scheduled for June 30, 2020. ECF No. 335.

## DISCUSSION

District courts may review detention orders issued by magistrate judges pursuant to 18 U.S.C. § 3145(b). Because McGlory is a pretrial detainee, the question of whether he should be detained is governed by 18 U.S.C. § 3142(i), a provision of the Bail Reform Act. That statute

permits a judicial officer to temporarily release a defendant from federal custody if he or she "determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

Statutory language aside, the Court recognizes the alarming scale and gravity of the COVID-19 pandemic and the serious health risks posed by the SARS-CoV-2 virus, particularly to those who may be especially vulnerable because of preexisting health conditions or age. In some situations, potential exposure to the virus in jails or prisons may provide a "compelling reason" warranting revocation of an order detaining a defendant pending trial. To assess whether concerns about COVID-19 constitute a "compelling reason" warranting temporary release in this case, the Court will consider a number of factors that are set out in greater detail below.

As a starting point, the Court takes note of a decision by another district court in this circuit, which itself relied on a decision from a district court in Kansas. *United States v. Smoot*, No. 2:19-CR-20 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020) (citing *United States v. Clark*, No. 19-40068-01, 2020 WL 1446895, at *9 (D. Kan. Mar. 25, 2020)). Both *Smoot* and *Clark* dealt with pretrial detention. The factors set out in *Smoot* and *Clark* are: (1) the original grounds for the defendant's detention; (2) the specificity of the defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to

4

mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *See Smoot*, 2020 WL 1501810 at *2; *Clark*, 2020 WL 1446895 at *9. While helpful, these factors do not explicitly require the Court to consider the actual conditions in the facility where the defendant is being held, and in particular the existence or prevalence of the disease in the institution and the measures being taken there to address the potential outbreak of COVID-19.

Consequently, the Court will apply a modified set of factors based on those in *Smoot/Clark* in considering whether the defendant has set out a "compelling reason" in favor of release:

(1)  the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.);

(2)  the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment);

(3)  whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community;

(4)  the original grounds for the defendant's pretrial detention.

McGlory has identified hypertension as a specific health concern that he says places him in a higher-risk category for COVID-19. Although the government does not dispute that McGlory suffers from hypertension,

it observes that McGlory told pretrial services he was in excellent physical health and that, although he currently takes blood-pressure medication, a radiologist in 2019 found "no radiographic evidence for an acute cardiopulmonary process." ECF No. 361, PageID.2466 (Gov't Resp. Br.). The Court is cognizant that prisoners with chronic medical problems "face serious risks to their health" during this pandemic. *Basank v. Decker*, No. 20 Civ. 2518 (AT), 2020 WL 1481503, at *3 (S.D.N.Y. Mar. 26, 2020) ("The nature of detention facilities makes exposure and spread of the virus particularly harmful."). The Centers for Disease Control have issued guidance explaining that people of advanced age, with underlying health problems, or both, are more susceptible to experiencing serious complications from COVID-19. *People Who Are at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL (Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

Further several courts, including two in this district, have identified hypertension as an underlying medical condition that renders a prisoner higher-risk, weighing against continued detention during the COVID-19 pandemic. *See United States of America v. Patino*, No. 18-cr-20451, 2020 WL 1676766, at *2 (E.D. Mich. Apr. 6, 2020) ("Mr. Patino is at high risk due to stage 3 chronic kidney disease and hypertension, and his age (63 years old)."); *United States v. Doshi*, No. 13-cr-20349, 2020 WL 1527186, at *1 (E.D. Mich. Mar. 31, 2020) (recommending that

6

prisoner with hypertension and diabetes be placed in home confinement); *Basank*, 2020 WL 1481503 at *3 (releasing detainee with hypertension from civil immigration detention due to COVID-19 concerns). Although McGlory has identified a preexisting health condition that may warrant heightened concern about his potential exposure to COVID-19, the Court's assessment of the four relevant factors as a whole weighs against revoking the Magistrate Judge's order of detention.

The Court is concerned about conditions in FDC Milan (where McGlory is being held) and FCI Milan. As of April 15—the most recent data this Court has access to for FDC Milan—only two FDC detainees had been diagnosed with COVID-19. ECF No. 361, PageID.2468. But recent data shows that 35 Milan FCI prisoners and 25 Milan employees (some of whom work at both the FDC and FCI) have tested positive. *COVID-19 Cases*, FEDERAL BUREAU OF PRISONS (Apr. 15, 2020), https://www.bop.gov/coronavirus/#. At the same time, the BOP, including FDC and FCI Milan, is taking a number of precautionary measures to reduce the spread of the virus in federal detention facilities. For example, the facility is screening all newly arriving prisoners for COVID-19 symptoms and exposure and quarantining them for 14 days as a matter of course (whether or not they display symptoms). ECF No. 361, PageID.2467–68. Correctional officers are also being regularly screened for symptoms, including by having their temperatures taken. *Id.* at PageID.2468. The facility has suspended in-person visitation and

7

attorney conferences, and increased sanitation measures, including by providing inmates with disinfectant for use in their cells. *Id.* Additionally, operation and programming for detainees has been "modified in order to assist with social distancing efforts." *Id.* Despite these efforts, the Court acknowledges it is well-established that "the high density of prison populations makes federal prisons ideal transmission grounds for the virus." *Doshi*, 2020 WL 1527186 at *2. *See Basank*, 2020 WL 1481503 at *3 ("The nature of detention facilities makes exposure and spread of the virus particularly harmful."); *United States v. Garlock*, No. 18-cr-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (collecting cases). Despite the BOP's diligent efforts to prevent transmission of the virus among detainees and employees, the fact that FDC and FCI Milan already have a number of diagnosed COVID-19 cases weighs in favor of release.

Nonetheless, release is not warranted in McGlory's case because he has not provided the Court with any information that indicates his release would be likely to mitigate—rather than exacerbate—COVID-19 risks for himself and the public. McGlory was originally arrested in Baltimore, Maryland. ECF No. 361, PageID.2456. The Magistrate Judge determined during the detention hearing that McGlory lacks significant family or community ties in this district. ECF No. 11 at PageID.1032–33. If he were released, McGlory explains he "would be staying with his wife and daughter." ECF No. 356, PageID.2406. Although he does not specify

the location of his family, the Court gathers from the government's briefing that McGlory's family resides in Moreno Valley, California. *See* ECF No. 361, PageID.2469. Allowing McGlory to travel back-and-forth between Michigan and California would not be consistent with stay-at-home rules and travel restrictions in both states and could increase, rather than decrease the risk that either McGlory, his family, or members of the public could contract COVID-19. Certainly, if McGlory were to become ill during the course of his travels he could inadvertently transmit the virus to others in California or Michigan. While both states have social-restriction orders in place that should mitigate risk of flight if they are followed, both also have a large number of diagnosed cases. At bottom, McGlory has not demonstrated that his release would reduce COVID-19 risks to himself and the community.

Finally, the original grounds for McGlory's detention were quite strong and continue to weigh against revoking detention. The Magistrate Judge determined that no condition of release could reasonably assure the safety of the community or Defendant's subsequent appearance in court. *See generally* ECF No. ECF No. 11. The offense McGlory is charged with—conspiracy to distribute controlled substances—is a serious one which carries indicia of danger. Because of his potentially lengthy sentence, the fact that he has no strong ties in this district, and the extensive cross-country travel he participated in as part of his alleged participation in a drug conspiracy, the Court remains concerned that

9

McGlory poses a flight risk. *See* ECF No. 361, PageID.2459 (Air Travel History). The government proffers information that, from February 4, 2016 to April 12, 2018, McGlory took some 28 cross-country flights to various locations in the United States on behalf of the drug conspiracy, and that the seized narcotics alone in the case had a value of over $2.5 million. *Id.* at PageID.2459, 2463. He has also failed to provide any new information that would justify revising the Magistrate Judge's previous determination regarding detention. At bottom, the motion contains no new information that allows the Court to conclude McGlory no longer poses a flight risk or a potential danger to the community. In the event that circumstances materially change regarding either McGlory's health status or the surrounding conditions of confinement, this matter could be revisited, but on the record before the Court, compelling reasons in support of release have not been presented.

## CONCLUSION

For these reasons, James McGlory's motion to revoke pretrial detention order (ECF No. 356) is **DENIED**.

**SO ORDERED.**

Dated: April 17, 2020        s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE

10